1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

## DISTRICT OF NEVADA

7   UNITED STATES OF AMERICA,                )
                                             )        Case No. 2:10-cr-00525-GMN-PAL
8                        Plaintiff,          )
                                             )        **REPORT OF FINDINGS AND**
9   vs.                                      )        **RECOMMENDATION**
                                             )
10  FRANK PHILIP GOLDSTEIN,                  )        (Mtn for Hearing - Dkt. #57)
                                             )
11                       Defendant.          )
    _____)
12

13          This matter is before the court on Defendant Frank Philip Goldstein's Motion for Evidentiary

14   Hearing (Dkt. #57).  The court has considered the Motion, the government's Response (Dkt. #61), and

15   Goldstein's Reply (Dkt. #69).

16                                        **BACKGROUND**

17          The grand jury returned an Indictment (Dkt. #1) against Goldstein on October 20, 2010,

18   charging him with Carjacking, in violation 18 U.S.C. § 2119; two counts of Use of a Firearm During

19   and in Relation to a Crime of Violence, in violation o f 18 U.S.C. § 924(c)(1)(A)(i) and (ii); and

20   Interference with Commerce by Armed Robbery, in violation of 18 U.S.C. § 1951.  The Indictment also

21   contains forfeiture allegations.  Defendant made his initial appearance on October 25, 2010, and Mr.

22   Michael Sanft was appointed to represent Goldstein.  *See* Minutes of Proceedings (Dkt. #7).  On May 2,

23   2011, the district judge appointed new counsel, Mr. Daniel Albregts, to represent Goldstein.  *See*

24   Minutes of Proceedings (Dkt. #31).  On October 17, 2011, Mr. Albregts moved to withdraw as counsel.

25   *See* Motion to Withdraw (Dkt. #44).  The undersigned held a hearing on the Motion to Withdraw on

26   November 8, 2011.  Mr. Goldstein indicated he wanted to represent himself.  The court conducted a

27   *Faretta* canvas, granted Mr. Albregts' request to withdraw, and allowed Goldstein to appear pro se,

28   with Mr. Albregts remaining as standby counsel.  *See* Minutes of Proceedings (Dkt. #47).

On January 27, 2012, Goldstein filed the instant Motion.  At a hearing on February 21, 2012, Goldstein requested additional time to file a reply to the Motion for Evidentiary Hearing and was granted a three-week extension.  *See* Minutes of Proceedings (Dkt. #64).  A reply was filed March 1, 2012.  *See* Dkt. #69.  On March 5, 2012, the court held a status hearing with Mr. Goldstein and standby counsel without government counsel to address defense issues  *See* Minutes of Proceedings (Dkt. #70).  Mr. Goldstein wanted to argue the merits of his Motion, but the court indicated it was inappropriate to hear argument without government counsel being present and advised that a written decision and order would be entered after the court reviewed Goldstein's reply.  The court took the under submission, indicating it would issue a written opinion after review of Goldstein's reply.

## DISCUSSION

**I.**     **Goldstein's Motion for Evidentiary Hearing (Dkt. #57).**

    **A.**     **The Parties' Positions.**

Goldstein seeks an order setting this matter for an evidentiary hearing.  He contends the request was discussed with Judge Navarro at a January 3, 2012, calendar call, and it was granted, but no hearing has been scheduled.  Goldstein seeks an order suppressing the written and oral statements he made to law enforcement, asserting he was under extreme duress and distress and was not in his right state of mind.  Goldstein maintains he had been shot in the middle lower back less than an hour before making the statements, while in the ambulance on the way to the hospital.  He contends his responses to the officer's questions in the ambulance could be misunderstood by a jury without knowing all the facts, and he will go into detail on that matter at an evidentiary hearing.

The government responds that suppression is not warranted because Goldstein's post-*Miranda* statement was voluntary and not the result of coercion by law enforcement.  The fact that Goldstein was shot does not render his statements to the officers involuntary.  Relying on the Supreme Court's decision in *Arizona v. Mincey*, 437 U.S. 385, 396 (1978), the government maintains Goldstein's mental and physical state was not serious enough to render his statements involuntary.  The government alleges that after he was shot, Goldstein could still drive and lead police on a high speed chase. He waived his *Miranda* rights, spoke freely with Officer Dong, and understood the questions he was asked, responding coherently. He admitted to lying, expressed remorse, and invoked his right to counsel.  Additionally,

1    Goldstein's claim that his statements could be misunderstood is irrelevant in light of the Supreme

2    Court's decisions in *Rogers v. Richmond*, 365 U.S. 534, 543-44 (1961), and *Lego v. Twomey*, 404 U.S.

3    477, 485 n.4 (1972), where the Court found that the truth or falsity of a confession is irrelevant to the

4    issue of admissibility, and the sole issue is whether a confession is coerced.  The government maintains

5    Goldstein can explain his statements if he chooses to testify and by cross-examining Officer Dong.

6    Finally, Goldstein has not raised any issue of fact to justify an evidentiary hearing and has not cited case

7    law in support of his position.

8         Goldstein replies that the government's facts are allegations and accusations only.  He maintains

9    "the carjacking was not a carjacking, nor an attempted robbery [of cash or a cellphone].  The attempted

10   robbery at Victor[y] Pharmacy was not an attempted robbery," and he will prove such at trial.  *Id.* at 2.

11   Defendant maintains the pharmacist shot him in the back outside of the pharmacy, and "the fight or

12   flight response was followed by a police chase."  He contends he was under duress and distress when he

13   gave his statement in the ambulance on the way to the hospital.  He never told police he was shot

14   attempting to rob the pharmacy.  The cases cited by the government are too dissimilar from this

15   case to apply.  He cannot state the "lies" contained in the government's Response because it "would tip

16   off the prosecution in regards to a surprise defense planned."  Reply at 3.  In the alternative, Goldstein

17   requests that if the court does not order an evidentiary hearing, it should permit an unlimited extension

18   of time to reply until after he is seen by a defense psychiatrist.

19        **B.    Goldstein's Request for an Evidentiary Hearing.**

20        The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on

21   a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness,

22   clarity, and specificity to enable the court to conclude that contested issues of material fact exist.

23   *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (citing *United States v. Walczak*, 783 F.2d

24   852, 857 (9th Cir. 1986); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990); *United States v.

25   Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972)

26   ("Evidentiary hearings need be held only when the moving papers allege facts with sufficient

27   definiteness, clarity, and specificity to enable the trial court to conclude that relief must be granted if the

28   facts alleged are proved.")).  "A hearing will not be held on a defendant's pre-trial motion to suppress

3

1   merely because a defendant wants one.  Rather, the defendant must demonstrate that a 'significant

2   disputed factual issue' exists such that a hearing is required."  *Howell*, 231 F.3d at 621 (*citing Harris*,

3   914 F.2d at 933).  The determination of whether an evidentiary hearing is appropriate rests in the

4   reasoned discretion of the district.

5        Goldstein requested a three-week extension to file a reply because he was attempting, with the

6   help of standby counsel, to arrange for a psychiatric examination to support his claims about his state of

7   mind at the time of the charged offenses and to support his motion to suppress.  At the time he filed his

8   reply, he had not been seen by a psychiatrist.  At this point, he has not set forth any contested issues of

9   fact to justify an evidentiary hearing in this matter.  He does not indicate that he wishes to testify at an

10  evidentiary hearing and has not made an offer of proof.  His conclusory statements that he was under

11  duress and distress and not in his right state of mind are insufficient to warrant a pretrial evidentiary

12  hearing.  However, before his statements are admitted, the government will be required to meet its

13  burden of establishing Goldstein's statements were voluntary.

14      **C.    Voluntariness.**

15      A voluntary statement is "one that is the product of a rational intellect and free will."  *United*

16  *States v. Kelley*, 953 F.2d 562, 564 (9th Cir. 1992), *overruled on other grounds by United States v.*

17  *Dearing,* 9 F.3d 1428 (9th Cir. 1993) (citing *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960)).  The

18  government bears burden of proving a confession is voluntary by a preponderance of the evidence.

19  *United States v. Jenkins*, 958 F.2d 934, 937 (9th Cir. 1991) (citing *Lego v. Twomey*, 404 U.S. 477, 489

20  (1972)); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).  "In evaluating voluntariness, the 'test is

21  whether, considering the totality of the circumstances, the government obtained the statement by

22  physical or psychological coercion or by improper inducement so that the suspect's will was

23  overborne."  *United States v. Male Juvenile,* 280 F.3d 1008, 1022 (9th Cir. 2002) (citing *Derrick,* 924

24  F.2d at 817); *Dickerson v. United States,* 530 U.S. 428, 434 (2000);

25      Coercive police activity is a necessary predicate to a finding that a confession is not voluntary.

26  *Id.* at 167; *Kelley,* 953 F.3d at 565 (citing *Connelly* for examples of police overreaching, including

27  lengthy questioning, deprivation of food or sleep, physical threats of harm, and forms of psychological

28  persuasion).  The personal characteristics of the accused are "constitutionally irrelevant absent proof of

4

[police] coercion." *Derrick*, 924 F.2d at 818 (quoting *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987) (citations omitted)).  There must also be some causal connection between the police conduct and the confession.  *Kelley*, 953 F.3d at 565 (citing *Connelly*, 479 U.S. at 164). The Court recognized in *Connolly* that "as interrogators have turned to more subtle forms of psychological persuasion, court have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus." *Connolly*, 479 U.S. at 164 (citing *Spano v. New York*, 360 U.S. 315 (1959)) (finding because there was no coercion by law enforcement, defendant's confession was voluntary despite his mental psychosis that interfered with free will); *see also Cunningham v. City of Wenatchee*, 345 F.3d 802, 810-11 (court found no police coercion and voluntary confession despite defendant's bipolar disorder, duration of interrogation being eight hours, and officer's denial of defendant's request to call therapist).

    However, a statement "may not be admitted if because of mental illness, drugs, or intoxication, the statement was not the product of a rational intellect." *Kelly*, 953 F.2d at 566 (citing *Gladden v. Unsworth*, 396 F.2d 373, 380-81 (9th Cir. 1968)) (confession voluntary despite defendant suffering heroin withdrawal, shaking and trembling, and telling agents they needed to hurry if they wanted to continue the interrogation); *see also United States v. Heller,* 551 F.3d 1108 (9th Cir. 2009) (confession voluntary despite defendant's ingesting Tylenol III before arriving at the police station); *United States v. Rodriguez-Rodriguez,* 364 F.3d 1142, 1146 (9th Cir. 2004), *amended on other grounds by* 393 F.3d 849 (9th Cir. 2005) (confession voluntary despite defendant's heroin withdrawal because defendant was alert, coherent, and oriented); *United States v. Coleman,* 208 F.3d 786, 791 (same); *Medeiros v. Shimoda*, 889 F.2d 819, 823 (9th Cir. 1989) (confession voluntary because defendant's intoxication did not overcome his free will; defendant was able to drive, obey officers' instructions, and was cooperative in talking with them); *United States v. Martin,* 781 F.2d 671, 674 (9th Cir. 1985) (type, dosage, and schedule of painkilling narcotic administered to defendant was insufficient to overbear defendant's will to resist questioning or impair his rational faculties).

    On the other hand, in *Mincey v. Arizona,* 437 U.S. 385, 398–99 (1978), the Supreme Court found that a statement obtained from a defendant who was in the hospital, in a near comatose condition, suffering great pain, while fastened to tubes, needles, and a breathing apparatus, was coerced and

1    therefore involuntary.  Similarly, in *Haynes v. State of Washington,* 373 U.S. 503, 511–12 (1963), the

2    Court invalidated a confession where the suspect was held by law enforcement for over five days and

3    never advised of his rights.  *Id.*  The Court has also found that where police questioned a suspect for

4    thirty-six hours straight, the suspect's confession was coerced and involuntary.  *See Ashcraft v.*

5    *Tennessee,* 322 U.S. 143, 149–54 (1944).  Likewise, in *Henry v. Kernan,* 197 F.3d 1021, 1028 (9th

6    Cir.1999), the Ninth Circuit determined defendant's confession was involuntary because detectives

7    admitted to continuing their interrogation after the defendant had unambiguously invoked his *Miranda*

8    rights.  *Id.; see also California Attorneys for Criminal Justice v. Butts,* 195 F.3d 1039, 1046 (9th

9    Cir.1999) (same).

10          Applying these cases to the case at bar, the court finds that Goldstein has not offered any

11   evidence of physical or psychological coercion or improper inducements by the LVMPD officers who

12   elicited statements from him.  Without evidence of coercion, Goldstein's personal characteristics–his

13   frame of mind and his physical injury–are constitutionally irrelevant.  *Male Juvenile,* 280 F.3d at 1022.

14   Goldstein has not pointed to any coercive conduct by law enforcement which render his statements

15   involuntary and warrant their suppression.  His conclusory statements that he was under duress and

16   distress because of his gun shot wound are insufficient.  He does not claim he was questioned or

17   interrogated after he invoked his right to counsel.

18          For these reasons,

19          **IT IS RECOMMENDED** Goldstein's Motion for Evidentiary Hearing (Dkt. #57) be DENIED.

20   However, before any statements are admitted , the government should be required to meet its burden of

21   establishing Goldstein's statements were voluntary by a preponderance of the evidence.

22          Dated this 4th day of May, 2012.

23

24                                              _____

25                                              PEGGY A. LEEN
                                                UNITED STATES MAGISTRATE JUDGE

26   / / /

27   / / /

28   / / /

                                                    6

**NOTICE**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court.  Pursuant to Local Rule of Practice (LR) IB 3-2(a), any party wishing to object to the findings and recommendations of a magistrate judge shall file and serve *specific written objections* together with points and authorities in support of those objections, within fourteen days of the date of service of the findings and recommendations.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's Order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  The points and authorities filed in support of the specific written objections are subject to the page limitations found in LR 7-4.