# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FRANK PHILLIP GOLDSTEIN, ) <br> ) <br> Defendant. ) | Case No. 2:10-cr-00525-GMN-PAL <br><br> **REPORT OF FINDINGS AND RECOMMENDATION** <br><br> (Motion to Dismiss - Dkt. #88) |

Before the court is Defendant's Motion for Dismissal Due to Brady Violation and Prosecutorial Misconduct (Dkt. #88). The court has considered the motion, which was filed while Mr. Goldstein was appearing pro se, and the government's Response (Dkt. #96). The motion was referred to the undersigned for a report of findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

## BACKGROUND

The grand jury returned an Indictment (Dkt. #1) against Goldstein on October 20, 2010, charging him with Carjacking, in violation of 18 U.S.C. § 2119; two counts of Use of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (ii); and Interference with Commerce by Armed Robbery, in violation of 18 U.S.C. § 1951. The indictment also contains forfeiture allegations. Goldstein made his initial appearance on October 25, 2010, and attorney Michael Sanft was appointed to represent him. See Minutes of Proceedings (Dkt. #7). On May 2, 2011, the district judge appointed new counsel, Dan Albregts, to represent Mr. Goldstein. See Minutes of Proceedings (Dkt. #31). On October 17, 2011, Mr. Albregts moved to withdraw as counsel. At a hearing on the motion to withdraw on November 8, 2011, Mr. Goldstein indicated he wanted to represent himself. The undersigned conducted a *Farretta* canvas, granted Mr. Albregts request to

1  withdraw, and allowed Goldstein to appear pro se, with Mr. Albregts remaining as standby counsel.
2  See Minutes of Proceedings (Dkt. #47).  The district judge conducted a calendar call on July 2, 2012.
3  The government made representations concerning the statutory sentence that could be imposed upon
4  conviction and inquired whether Mr. Goldstein understood the rules and was prepared to proceed with
5  trial without representation.  Mr. Goldstein requested appointment of new counsel and new counsel was
6  appointed.

7      In the current motion, Mr. Goldstein asks the court to dismiss the indictment against him based
8  on outrageous government conduct.  He alleges that the government knowingly and wilfully allowed
9  videotape evidence from an ATM at the Bank of America to be misplaced or destroyed.  He asserts that
10 this ATM video would have lead to the impeachment of the government's prime witness, Priscilliano
11 Sandoval, the driver of the alleged hijacked car.  Mr. Goldstein claims that the tape did not show him
12 dragging the witness out of the car at gunpoint or threatening the driver in any way.  Rather, the tape
13 clearly shows that he approached the driver after the driver stepped out of the vehicle and did not
14 brandish a gun or threaten the driver in any way.  The tape will show that Mr. Sandoval gave a false
15 statement and is a "liar and purgurer." [sic]  He believes the government obtained the tape, reviewed it,
16 and swept it under the rug. He asserts this violated the *Brady* rule because the ATM tape was never
17 made part of discovery.  Goldstein also argues that even if the prosecutor does not have this tape, the
18 government has a duty to learn of any valuable evidence favorable to the Defendant known to
19 government agents including the police.  Mr. Goldstein already filed a motion to disclose exculpatory
20 evidence, and the government's failure to produce the tape is a *Brady* violation.

21     The government filed a Response (Dkt. #96) pointing out that discovery in this case is
22 preceeding under a Joint Discovery Agreement (Dkt. #15).  Government counsel represents that he has
23 complied with the Joint Discovery Agreement and with the government's constitutional obligations
24 under *Brady v. Maryland*, 375 U.S. 83 (1963) and its progeny.  Government counsel also represents that
25 the government has never been in possession of a video from a Bank of America ATM.  In an
26 abundance of caution, the FBI again checked with the Las Vegas Metropolitan Police Department
27 ("LVMPD") to inquire about an ATM video and was advised LVMPD is not in possession of an ATM
28 video.  Thus, the government did not misplace or destroy any evidence in this case.

**DISCUSSION**

Government counsel represents that neither it, nor its agents, nor LVMPD are in possession of an ATM video from the Bank of America. There is no evidence before the court that an ATM video ever existed. The government has a limited duty to preserve evidence. The Ninth Circuit generally applies a two-prong test to determine whether the government's failure to preserve evidence violates a defendant's due process rights. The defendant must show: (a) that the evidence was material; and (b) that police acted in bad faith. The *United States v. Flyer*, 633 F.3d, 911, 916 (9th Cir. 2011); *United States v. Martinez-Martinez*, 369 F.3d 1076. 1086 (9th Cir. 2004) ("failure to collect and preserve evidence that is potentially exculpatory may violate defendant's due process rights if that failure was motivated by bad faith."); *United States v. Barton*, 995 F.2d 931, 933-34 (9th Cir. 1993). The Defendant has not established that there was a videotape at the Bank of America ATM, or that the government and its agents were ever in possession of such a tape, or that the government acted in bad faith in failing to preserve it.

For these reasons,

**IT IS RECOMMENDED** that the Motion to Dismiss (Dkt. #88) be **DENIED**.

Dated this 30th day of August, 2012.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Peggy A. Leen
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge