**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>FRANK PHILIP GOLDSTEIN,<br><br>                Defendant. | Case No. 2:10-cr-00525-GMN-PAL<br><br>**REPORT OF FINDINGS OF FACT<br>AND RECOMMENDATION**<br><br>(Mtn to Suppress - Dkt. #122) |

This matter is before the court on Defendant Frank Philip Goldstein's Motion to Suppress (Dkt. #122) filed October 1, 2012. The court has considered the Motion, the government's Response (Dkt. #127), and Goldstein's Reply (Dkt. #131).

**BACKGROUND**

The grand jury returned an Indictment (Dkt. #1) against Goldstein on October 20, 2010, charging him with Carjacking, in violation 18 U.S.C. § 2119; two counts of Use of a Firearm During and in Relation to a Crime of Violence, in violation o f 18 U.S.C. § 924(c)(1)(A)(I) and (ii); and Interference with Commerce by Armed Robbery, in violation of 18 U.S.C. § 1951. The Indictment also contains forfeiture allegations. Specifically, the Indictment alleges that on October 5, 2010, around 1:15 p.m., Goldstein approached a driver in the ATM drive-thru lane at a Las Vegas, Nevada, Bank of America, brandished a loaded gun at the driver's chest, and ordered the driver to exit his vehicle, a 1999 General Motors Yukon. Goldstein is alleged to have driven the Yukon to Victory Pharmacy, where he allegedly attempted to rob the pharmacy. Goldstein is alleged to have fled the pharmacy in the stolen Yukon and led the police on a chase. During the chase, Goldstein allegedly crashed the Yukon into another unoccupied vehicle. He was eventually apprehended by Las Vegas Metropolitan Police Department ("LVMPD") officers after he disabled the Yukon by crashing into a power box.

Goldstein was taken by ambulance to Sunrise Hospital. After he left the scene, LVMPD crime scene analyst Taylor conducted a warrantless search of the Yukon before it was towed from the scene. The impound report, which is attached to the Motion to Suppress as Exhibit 1, indicates that eight items were recovered from the inside of the Yukon: two samples of blood from the driver's seat; two samples of potential DNA from the steering wheel; a white plastic face mask; a red plastic face mask with an attached hood; a black and blue bag with a Hilton Grand Vacations Club logo; and a pair of sunglasses. Law enforcement officers opened the Hilton bag and found: two pairs of eyeglasses, four latex gloves, a keychain, and one black firearm magazine with seven cartridges.

Defendant made his initial appearance on October 25, 2010, entered a not guilty plea to the charges in the Indictment, and the court appointed Mr. Michael Sanft to represent Goldstein. *See* Minutes of Proceedings (Dkt. #7). On May 2, 2011, the district judge relieved Mr. Sanft as counsel of record and appointed new counsel, Mr. Daniel Albregts, to represent Goldstein. *See* Minutes of Proceedings (Dkt. #31). On October 17, 2011, Mr. Albregts moved to withdraw as counsel. *See* Motion to Withdraw (Dkt. #44). The undersigned held a hearing on the Motion to Withdraw on November 8, 2011. Mr. Goldstein indicated he wanted to represent himself. The court conducted a *Faretta* canvas, granted Mr. Albregts' request to withdraw, and allowed Goldstein to appear pro se, with Mr. Albregts remaining as standby counsel. *See* Minutes of Proceedings (Dkt. #47). On July 19, 2012, the district judge held a hearing and appointed attorney Philip Brown as counsel for Goldstein at Goldstein's request. *See* Minutes of Proceeding (Dkt. #110); Order Appointing Counsel (Dkt. #111).

## DISCUSSION

### I.     The Parties' Positions.

Goldstein contends that evidence from LVMPD's warrantless search of the Yukon must be suppressed because no exception to the warrant requirement applies. Goldstein asserts the search was not an inventory search because it was conducted by a crime scene analyst, not an impounding police officer. Goldstein contends the analyst's search was a ruse for the police to generally rummage through the car to discover incriminating evidence, and lacks the characteristics of a standard inventory search. This is evidenced by the fact that the analyst only recovered and documented evidence with perceived evidentiary value to the robbery investigation and recovered items not normally documented in an

inventory search–such as the samples blood and DNA evidence from the seat and steering wheel.

Additionally, the search incident to arrest exception enunciated by the Supreme Court in *Arizona v. Gant,* 556 U.S. 332 (2009) does not apply because at the time the search was conducted, Goldstein had already been handcuffed and taken by ambulance to Sunrise Hospital.  Finally, relying on the Ninth Circuit's decision in *United States v. Williams,* 630 F.2d 1322, 1326 (9th Cir. 1980), Goldstein contends that the automobile exception to the warrant requirement established by the Supreme Court in *Pennsylvania v. Labron,* 518 U.S. 938 (1996), and *Maryland v. Dyson*, 527 U.S. 465 (1999), does not justify the search because the Yukon was not "readily mobile."

The government responds that Goldstein's Motion should be denied because Goldstein does not have standing to contest the search.  Citing the Ninth Circuit's opinion in *United States v. Caymen,* 404 F.3d 1196, 1200 (9th Cir. 2005), the government asserts that Goldstein has no reasonable expectation of privacy in the Yukon because he stole the car at gunpoint from its lawful owner.  This lack of standing to challenge the Yukon's search extends to the contents of the Yukon, including the duffel bag. Assuming Goldstein has standing to challenge the Yukon's search, the government maintains the search was conducted incident to Goldstein's lawful arrest.  Thus, no warrant was required under the Supreme Court's opinion in *Gant,* and it is immaterial whether or not Goldstein had already been handcuffed and taken to the hospital at the time the search was completed.

Finally, relying on *United States v. Ruckes,* 586 F.3d 713, 718 (9th Cir. 2009), the government asserts it can establish by a preponderance of evidence that police would have inevitably discovered the items seized from the Yukon.  Because Goldstein crashed the Yukon into a power box, the car was towed and impounded.  Even if the crime scene analyst had not conducted a search for evidence at the scene, police would have conducted an inventory search of the Yukon.

Goldstein replies that he had a reasonable expectation of privacy in the "closed containers" inside the Yukon based on the Supreme Court's decision in *Robbins v. California,* 453 U.S. 420 (1981), *overruled on other grounds by United States v. Ross,* 456 U.S. 798 (1982). Additionally, pursuant to the Ninth Circuit's opinion in *United States v. Davis,* Goldstein argues that expectation of privacy was not diminished because he lacked "exclusive control" over the Yukon.  Goldstein also contends that the government's reliance on the search incident to arrest exception to the warrant requirement is misplaced

3

because that exception only applies where the search is conducted contemporaneously with the arrest and in the immediate presence of the person being arrested. Here, the Yukon's search occurred an hour after Goldstein left the scene by ambulance. The rationale for the exception–to protect officers and preserve evidence within the "wingspan" of the arrestee–does not apply where, as here, Goldstein was no longer near the Yukon when the search was conducted. Finally, the doctrine of inevitable discovery is disfavored and does not apply when police far exceed the scope of an ordinary inventory search.

## II.  Applicable Law & Analysis.

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347 (1967). The Fourth Amendment protects "people not places." *Id*. Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

A person must have a reasonable expectation of privacy in the place searched to claim a violation of his or her Fourth Amendment rights. The Supreme Court has enunciated a two-part test to determine whether an expectation of privacy is reasonable and legitimate. *See Katz*, 389 U.S. at 361. First, the individual must have an actual subjective expectation of privacy, and second, society must recognize that expectation as objectively reasonable. *Id*.

The defendant bears the burden of establishing, under the totality of the circumstances, that the search violated his legitimate expectation of privacy in the place searched or the things seized. *Rakas v. Illinois*, 439 U.S. 128 (1978); *Davis*, 332 F.3d at 1167. The Supreme Court has held that the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas*, 439 U.S. at 143; *see also Minnesota v. Carter*, 525 U.S. 83, 88 (1998). In *Minnesota v. Carter*, the Supreme Court held that a person present in an apartment for purposes of bagging cocaine had no legitimate expectation of privacy in the searched premises and, therefore, lacked the capacity, or standing, to challenge the constitutionality of the search. 525 U.S. at 88. The Court stated that in order to claim the Fourth Amendment's protection, "a defendant must demonstrate that he personally has an

expectation of privacy in the place searched and that his expectation is reasonable." *Id.*; *see also Caymen,* 404 F.3d at 1199 (defendant bears burden of proving legitimate expectation of privacy).

The Ninth Circuit has held that the Fourth Amendment does not protect a defendant from a warrantless search of property the defendant stole, irrespective of whether the defendant "expects to maintain privacy in the contents of the stolen property." *Caymen,* 404 F.3d at 1200. The court reasoned that any subjective expectation of privacy in stolen property is not one that society is prepared to accept as reasonable. *Id*. Rather, a legitimate expectation "means more than a subjective expectation of not being discovered." *Id.*; *see also United States v. Wong,* 334 F.3d 831 (9th Cir. 2003) (person lacks reasonable expectation of privacy in contents of laptop computer he stole). Further, any possessory interest a thief may have is subordinate to the rights of the true owner. *Id.* (citing *Terry v. Enomoto*, 723 F.2d 697, 699 (9th Cir. 1984)). Any expectation of privacy asserted by a defendant in stolen property is "not a legitimate expectation that society is prepared to honor." *Id.* at 1201.

In *Cotton v. United States*, 371 F.2d 385 (9th Cir. 1967), the Ninth Circuit held that a driver of a stolen car had standing to object to a search of the car. However, in *Rakas,* the Supreme Court effectively overruled *Cotton* and other lower court cases that had held a person is a stolen automobile had standing to object the lawfulness of the search of that automobile. 439 U.S. at 141 n.9 (citing *Cotton*, 371 F.2d 385). Since then, the Ninth Circuit has explicitly held that a defendant has no standing to contest a search of a stolen car. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Only a vehicle owner or an individual with a legitimate privacy interest in the vehicle may challenge a search of a stolen automobile. *Id.* Other federal circuits have also found that a defendant who knowingly possesses a stolen car has no legitimate expectation of privacy in the car. *Id.* at 1200 (citing *United States v. Tropiano,* 50 F.3d 157, 161 (2d Cir. 1995); *United States v. Betancur*, 24 F.3d 73, 76-77 (10th Cir. 1994) (defendant must show he was in lawful possession of vehicle to challenge search of car); *United States v. Lanford*, 838 F.2d 1351, 1353 (5th Cir. 1988) (defendant in possession of stolen vehicle has standing to challenge search); *United States v. Hensel,* 672 F.2d 578, 579 (6th Cir.) (per curium) (same), *cert. denied,* 457 U.S. 1107 (1982); *United States v. Hargrove,* 647 F.2d 411, 413 (4th Cir. 1981) (same)).

The court finds Goldstein has not met his burden of showing a legitimate expectation of privacy

in the stolen Yukon.  He does not dispute that the vehicle was taken from the owner, or claim that he had a legitimate expectation of privacy in the vehicle.  Rather, he claims that he had a legitimate expectation of privacy in his own belongings which he put inside the Yukon, including the blue and black Hilton duffel bag.  He cites *United States v. Davis* to support his argument.  There, the Ninth Circuit held that a defendant had a reasonable expectation of privacy in a closed duffel bag kept under the bed in a friend's home where the defendant occasionally stayed and kept clothing, even though the bed was not exclusively under the defendant's control.  332 F.3d 1163, 1169 (9th Cir. 2003).  *Davis* is clearly distinguishable from the facts of this case.  An occasional or overnight guest has a reasonable expectation of privacy in the host's home.  *Minnesota v Olson*, 495 US 91, 96-97 (1990).

It is undisputed that the police did not have a warrant or Goldstein's consent to search the vehicle.  However, Goldstein's subjective expectation of privacy in a closed container he placed in the stolen vehicle is not one that society is prepared to accept as reasonable.  *See Caymen,* 404 F.3d at 1200-01.  There, the Ninth Circuit agreed with the holdings of the Second, Fourth, Fifth and Sixth Circuits "that a person who steals a car does not have a reasonable expectation of privacy that entitles him to suppress what is found in a search of the stolen car."  *Id*. at 1200.  In *Caymen,* the defendant fraudulently obtained a laptop computer from a business supply store.  He moved to suppress the warrantless search of the contents of the laptop.  The district court denied the motion to suppress.  On appeal, the Ninth Circuit affirmed, holding the defendant lacked standing to challenge the search.  Analogizing the laptop to a stolen car, the Ninth Circuit held that the defendant could not challenge law enforcement's search of the laptop he obtained by fraud because he had no reasonable expectation of privacy in the contents of the hard drive.  *Id.* at 1201.

Goldstein lacks standing to assert a Fourth Amendment violation stemming from the search of the stolen Yukon or the contents he placed in the Yukon.  As Goldstein lacks standing to challenge the search of the Yukon, the court need not decide whether any other grounds might have justified the search of the Yukon and its contents.

/ / /

/ / /

/ / /

For all of these reasons,

**IT IS RECOMMENDED** that Goldstein's Motion to Suppress (Dkt. #122) be DENIED.

Dated this 26th day of October, 2012.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE