**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America, | |
| Plaintiff, | Case No.: 2:10-cr-00525-JAD-PAL |
| vs. | **Order Denying**<br>**Motion in Limine to Exclude**<br>**Psychiatric Testimony [Doc. 95]** |
| Frank Goldstein, | |
| Defendant | |

This criminal case arises out of Defendant Frank Goldstein's indictment for carjacking, attempted robbery, and firearm brandishings.[1]  The Government seeks to prevent Goldstein from offering any evidence of insanity or mental defect.[2]  Having considered the record and relevant law, the Court denies the Government's motion and permits Goldstein to offer expert testimony as to the specific-intent crimes charged, subject to the limitations discussed in this order.

**Background**

Goldstein is charged with carjacking a vehicle from a Bank of America drive-through ATM, followed immediately by an attempted robbery at Victory Pharmacy in Las Vegas, and with using a firearm in committing each of these crimes.[3]  During a skirmish with the pharmacist, Goldstein was shot in the buttocks area.  He fled and proceeded to lead the Las Vegas Metropolitan Police

---

[1] Doc. 1.

[2] Doc. 95.

[3] Doc. 1 at 1–3.

1

Department ("LVMPD") on a high-speed chase,[4] driving erratically, entering and exiting the freeway twice, and hitting a parked car; a second collision finally stopped the vehicle.[5]

Officer Alan Dong removed Goldstein from the vehicle, took him into custody, and called for emergency medical services.[6]  Goldstein was screaming and apologetic: he said was sorry for what he did, that it was a stupid thing to do, and that he wanted Officer Dong to call his wife.[7]  The officer then noticed an empty gun holster on the ground and asked Goldstein about the whereabouts of the gun.[8]  The officer continued to ask Goldstein questions during the approximately five to eight minutes between Goldstein's apprehension and the reading of his *Miranda* rights by another officer, Officer Balsassare.[9]  Goldstein indicated he understood his *Miranda* rights and, after further questioning, said the gun was at the pharmacy.[10]

Emergency medical responders then arrived, briefly treated Goldstein, and transported him to the hospital in an ambulance.[11]  Officer Dong rode in the ambulance with Goldstein and made an audio recording of their conversation during which Goldstein responded to Officer Dong's questions with inculpatory statements about the charged carjacking and robbery attempt until Goldstein eventually said that he did not want to talk anymore.[12]  Officer Dong then asked whether Goldstein wanted a lawyer, Goldstein responded that he did, and the interrogation in the ambulance ended.[13]

---

[4] Doc. 150 at 40–41.

[5] Doc. 122 at 2; Doc. 127 at 2–3.

[6] Doc. 150 at 9–10.

[7] *Id.* at 11 at 15.

[8] *Id.* at 11.

[9] *Id.* at 37.

[10] *Id.* at 14–16.

[11] *Id.* at 17–18.

[12] Mot. Hr'g, Oct. 16, 2012, Gov't Ex. 1, Tr. of Oct. 5, 2010 Ambulance Statements (hereinafter "Ex. 1"); Mot. Hr'g, Oct. 16, 2012, Gov't Ex. 2, Audio Recording of Oct. 5, 2010 Ambulance Statements (hereinafter "Ex. 2").

[13] *Id.*

1    The Government's Motion in Limine seeks to preclude Goldstein from introducing evidence

2    of insanity or negating specific intent.[14]  The Government argues that Goldstein has failed to provide

3    proper notice of either type of evidence under Federal Rule of Criminal Procedure 12.2 and that no

4    expert cannot testify to Goldstein's state of mind under Federal Rule of Evidence 704(b).[15]  Further,

5    the Government contends that the Forensic Psychiatric Evaluation ("the Evaluation") that Goldstein

6    attached under seal to an objection to the Magistrate Judge's Report and Recommendation fails to

7    support admission of insanity or specific-intent evidence.[16]  The Government requests that, if this

8    Court finds the contested evidence admissible, the Court order a mental examination of Defendant

9    under Rule 12.1(c).[17]  Goldstein counters that he has not violated Rule 12.2's notice requirements

10   with respect to either insanity or diminished capacity and that the Ninth Circuit permits diminished-

11   capacity defenses to specific-intent crimes.[18]  The Court addresses the Government's and

12   Goldstein's arguments in turn.

13                                              **Discussion**

14   **A.      Defenses Under Rule 12.2 Require Notice to the Government and to this Court**.

15         Federal Rule of Criminal Procedure 12.2 governs a defendant's introduction of expert

16   evidence regarding insanity or mental condition that goes to the issue of guilt.  The defendant must

17   notify the government in writing and file a notice with the court clerk either "within the time

18   provided for filing a pretrial motion" or "at any later time the court sets."[19]  Local Rule 12-1 requires

19   a defendant to serve pretrial notice regarding insanity or mental condition within thirty days of

20   arraignment.[20]  For good cause, the Court may "allow the defendant to file the notice late, grant the

21

22   ─────────────────

     [14] Doc. 95 at 4–6.

23   [15] *Id.* at 4, 11.

24   [16] *Id.*; *see also* Doc. 85 (psychiatric evaluation), Doc. 87 (Report and Recommendation).

25   [17] Doc. 95 at 12.

26   [18] Doc. 114 at 2–4.

27   [19] Fed. R. Crim. P. 12.2(a)–(b).

28   [20] LR 12-1(a)(1), (b)(6).

parties additional trial-preparation time, or make other appropriate orders."[21]  Rule 12.2 preludes a defendant who fails to provide notice of an insanity defense from raising the defense at trial.[22]  Expert evidence on defendant's mental disease, defect, or condition bearing on the issue of guilt is barred only if the defendant fails to give notice under Rule 12.2(b) or, alternatively, refuses to submit to a mental examination ordered by the court under Rule 12.2(c)(3).[23]  According to the Advisory Notes, failure to provide notice on insanity or mental state "commonly results in the necessity for a continuance in the middle of a trial," which suggests a preference for admitting both evidence types.[24]  The Supreme Court recognized in *United States v. Veatch* that district courts may grant relief from Rule 12.2(a)'s exclusion provisions at their discretion, as they may with regard to other pretrial motions in criminal cases.[25]

Rule 12.2 is substantive in purpose, not formalistic.[26]  Its original purpose was to afford the Government time for preparing its rebuttal.[27]  Under previous federal law, when an insanity defense was raised, the burden shifted to the government to prove sanity beyond a reasonable doubt.[28]  Justice thus required prior notice to the government "in view of the significance of this burden."[29]

---

[21] *Id.*

[22] Rule 12.2(a).

[23] Rule

[24] *See* Fed. R. Crim. P. 12.2 advisory committee's note.

[25] *See United States v. Veatch*, 674 F.2d 1217 (9th Cir. 1981) (citing *Davis v. United States*, 411 U.S. 233, 245 (1973) (discussing district court discretion with regard to the waiver provision of Rule 12(b)(2)); *see also United States v. Cameron*, 907 F.2d 1051, 1058 (11th Cir. 1990) (citing Fed. R. Crim. P. 12(c)) (writing that "the district court has broad discretion in determining the time period for filing pretrial motions.").

[26] *United States v. Winn*, 577 F.2d 86, 89 (9th Cir. 1978) (citing Fed. R. Crim. P. 12.2 advisory committee's note).

[27] *Id.*; *accord* Fed. R. Crim. P. 12.2 advisory committee's note (writing that "[t]he objective is to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony.").

[28] *Davis v. U.S.*, 160 U.S. 469, 485–86 (1895) (writing that guilt cannot "be regarded as proved, if the jury entertain a reasonable doubt from all the evidence whether he was legally capable of committing crime.").

[29] *Winn*, 577 F.2d at 89.

The Insanity Defense Reform Act of 1984 ("IDRA") shifted this burden to defendants for proof by clear and convincing evidence.[30]  Under IDRA, the government still must prove each essential element of a crime beyond a reasonable doubt.  The notice purpose of Rule 12.2 thus remains important, as the government must prepare to meet the defendant's evidence regarding insanity and mental condition.  As one court has observed, however, "sanity is not an element of a crime."[31]  Rather than require the government to prove criminal defendants' sanity, Congress now requires defendants to disprove their own sanity when they raise such a defense.

By its Motion in Limine, the Government contends that Goldstein has neither notified the Government in writing nor filed notice with the clerk.[32]  Further, based on the Evaluation, it argues that Defendant has not shown whether he intends to offer expert testimony as to insanity or specific intent.[33]  Goldstein relies on the court's discretionary authority to argue that he still had time to comply with Rule 12.2.[34]

Three important developments have occurred since the Government filed its Motion in Limine.  First, Goldstein appeared pro se at that time, but he has since retained counsel.[35]  Thus, he implicitly urges the Court to view his initial failure to give notice with leniency.[36]  His request is understandable, especially in light of the mandate to liberally construe "[t]he handwritten pro se document."[37]  The Court notes that Goldstein had court-appointed counsel when he was arraigned, but his initial submission of the 2012 evaluation was indeed a handwritten pro se document, and his

---

[30] 18 U.S.C. § 17(b).

[31] *Tennessee v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (citing *Patterson v. New York*, 432 U.S. 197, 204–16 (1977)).

[32] Doc. 95 at 4.

[33] *Id.*

[34] *Id.* at 2–3.

[35] Doc. 95 at 1;  Doc. 114 at 1.

[36] *See id.* at 3.

[37] *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also* Doc. 114 at 3.

1    new attorney has since sought to comply with the requirements of Rule 12.2.[38]

2           Second, the Government filed its Motion in Limine on June 26, 2012, when trial was

3    scheduled for July 10, 2012.[39]   At that time, it wrote that "Defendant's lack of notice frustrates the

4    purpose of Rule 12.2, which is to afford the government time to prepare its rebuttal against a claim

5    of insanity or other mental condition and to avoid delay at trial."[40]   Notice, if permitted before that

6    trial date, would have been required in short order.  Goldstein filed his opposition on August 24,

7    2012.[41]   The case has since been reassigned to this Court, and trial is now scheduled for June 17,

8    2014.

9           Third, Goldstein sought to comply with the Rule by filing a Notice of Intent to Present

10   Expert Evidence of a Mental Condition Pursuant to Federal Rule of Criminal Procedure 12.2(b) on

11   September 19, 2012.[42]   He further filed a Notice of Intent to Call Expert Witnesses, which listed the

12   psychiatrist who created the Evaluation, on October 14, 2012.[43]   This second notice was docketed

13   one year, eight months, and three days before the current trial date.

14          Goldstein was arraigned more than three years ago on October 25, 2010.[44]   His Rule 12.2(b)

15   notice was filed in September 2012, which placed him significantly beyond the District of Nevada's

16   timeline for asserting evidence of insanity or mental condition: that requires notice thirty days after

17   arraignment.[45]   As both parties are aware, however, this Court may permit a late filing for good

18   cause.[46]   The Government's Motion in Limine was submitted shortly before the flurry of notices

19   _____

20          [38] *See* Docs. 10, 85, 114, 124, 129.

21          [39] Doc. 115 at 1.

22          [40] Doc. 95 at 4.

23          [41] Doc. 114.

24          [42] Doc. 124.

25          [43] Doc. 129.

26          [44] Doc. 7.

27          [45] *See* LR 12-1(a)(1), (b)(6).

28          [46] Fed. R. Crim. P. 12.2(a)–(b).

1     arrived from Defendant and, now, the cases relied upon by the Government are substantively

2     distinguishable.  Those cases are all examples of little or no pretrial notice.[47]  In this case, the now-

3     represented Defendant has established exactly which argument he intends to raise under Rule

4     12.2(b)—mental condition, rather than insanity—and he has filed expert witness notices.  At the

5     time of trial, the Government will have been on notice of Goldstein's intentions for more than 20

6     months.

7           This Court bears in mind that Rule 12.2's purpose is substantive, not formalistic: it seeks to

8     make the government aware of insanity and mental defect issues in advance of trial, and originally,

9     was drafted when the government bore the burden of doubt for insanity defenses.[48]  Here, the

10    Government need not prove Goldstein's sanity: IDRA shifted that burden to Goldstein and,

11    regardless of who bears the burden, Goldstein is not putting his sanity at issue.  Further, Rule 12.2's

12    purpose is satisfied in this case, as Goldstein supplied notice in September 2012 and trial is

13    scheduled for June 2014.  As new counsel supplied notice well in advance of trial and that notice

14    otherwise comports with Rule 12.2, this Court perceives no need to bar the mental-condition

15    evidence on procedural grounds.  Thus, the Court now considers the substantive admissibility of the

16    evidence itself.

17    **B.**      **Defendant May Provide Evidence of Mental Condition regarding Specific Intent**.

18           The Government argues that the Evaluation is not probative of Goldstein's specific intent

19    and therefore should not be permitted as diminished-capacity evidence.[49]  Goldstein counters that,

20    because he is charged with specific-intent crimes and diminished capacity can negate specific intent,

21

22

23         [47] See Doc. 95 at 4 (citing *United States v. Veatch*, 674 F.2d 1217, 1224–25 (9th Cir. 1981)

24 (local rule required filing notice of insanity defense fifteen days before trial and defendant filed notice on the day of trial)) (citing *United States v. Caplan*, 633 F.2d 534, 538–39 (9th Cir. 1980)

25 (defendant did not renew motion for examination to determine sanity after he was found competent to stand trial and never provided notice pursuant to Rule 12.2)) (citing *United States v. Cox*, 826

26 F.2d 1518, 1522–23 (6th Cir. 1987) (defendant conceded that he failed to comply with Rule 12.2's notice requirement and showed no good cause to support a late filing)).

27         [48] *Winn*, 577 F.2d at 89 (citing Fed. R. Crim. P. 12.2 advisory committee's note).

28         [49] Doc.

1    he should be permitted to present evidence regarding his capacity.[50]

2         United States v. Frisbee, the seminal case on IDRA[51], recognizes that "the Ninth Circuit's

3    rule allowing expert testimony negating the existence of specific intent is unaltered by the enactment

4    of" IDRA.[52]  This circuit joins nearly every other circuit in interpreting IDRA to permit defendants

5    to offer evidence on whether they possessed the mental condition requisite for a specific-intent

6    crime—and it has long found such evidence admissible.[53]  In the Ninth Circuit, "the district court

7    [has] wide latitude in admitting or excluding psychiatric evidence directed to the capacity of a

8    defendant to entertain a specific intent or directed to the credibility of a witness."[54]

9         The central inquiry is whether the defendant's diminished-capacity evidence goes to specific

10   intent, which the government must prove when prosecuting specific-intent crimes.[55]  A finder of fact

11   can consider diminished-capacity evidence and still be unpersuaded;[56] a defendant may still be

12   convicted because the government proves beyond a reasonable doubt that he actually committed all

13   acts charged and that, at the time of commission, he "appreciated the nature and quality or the

14

15        [50] Doc. 114 at 3.

16        [51] *United States v. Frisbee*, 623 F. Supp. 1217, 1223 (N.D. Cal. 1985); *see also United States
17   v. Twine*, 853 F.2d 676, 677 (9th Cir. 1988) (calling *Frisbee* "[t]he seminal case addressing this
     issue").

18        [52] The Eleventh Circuit reads *Frisbee* as focusing on "the proffered link or relationship
19   between the specific psychiatric evidence offered and the mens rea at issue in the case." *Cameron*,
     907 F.2d at 1067 n.31.  This is evidence going to the issue of specific intent.  It is not "unarticulated,
20   general psychiatric evidence of mental abnormality." *Id.* at 1054.

21        [53] *Compare Twine* (Ninth Circuit ruling), 853 F.2d at 679, *United States v. Pohlot*, 827 F.2d
22   889, 897–98 (3d Cir. 1987), *United States v. Worrell*, 313 F.3d 867, 872–74 (4th Cir. 2002), *United
     States v. Newman*, 889 F.2d 88, 91–92 & n.1 (6th Cir. 1989), *United States v. Fazzini*, 871 F.2d 635,
23   641 (7th Cir. 1989), *United States v. Bartlett*, 856 F.2d 1071, 1082 (8th Cir. 1988), *United States v.
     Vazquez-Pulido*, 155 F.3d 1213 (10th Cir. 1998), *and Cameron*, 907 F.2d at 1063–66 (Eleventh
24   Circuit ruling), *with United States v. White*, 766 F.2d 22, 24–25, 25 n.2 (1st Cir. 1985) (declining to
     wade into "the quagmire of 'diminished capacity'" and later read as dicta by the Ninth and Eleventh
25   Circuits), *and United States v. Shay*, 57 F.3d 126, 136–37 (1st Cir. 1995) (applying the Eleventh
     Circuit's ruling in *Cameron* when upholding a district court's exclusion of diminished capacity
     evidence based on the abuse of discretion standard).

26        [54]*United States v. Erskine*, 588 F.2d 721, 722 (9th Cir. 1978) (per curiam)).

27        [55] *See id.* at 681–82.

28        [56] *See id.* at 682.

8

wrongfulness of the acts."[57]  But diminished-capacity evidence is admissible because, "while the competence and persuasiveness of the offered testimony can be questioned, the relevance of the subject matter cannot be."[58]  In this circuit, district courts determine specific intent through "all the facts and circumstances surrounding the case."[59]

In *United States v. Cohen*, the Ninth Circuit reviewed a district court's decision to exclude diminished-capacity evidence on the basis that the psychiatrist "failed to explain how the alleged mental disorders negate mens rea.  Rather, [his] opinion merely explain[ed] or justifie[d] [the defendant's] conduct."[60]  In that case, much like here, the government argued that the psychiatrist's "report was irrelevant because nothing in it suggested that defendant was not capable of forming the requisite mens rea."[61]  The Ninth Circuit recognized that, under Federal Rule of Evidence 704(b), an "expert may not draw[] an inference which would necessarily compel the conclusion that the defendant lacked the requisite mens rea."[62]  Yet the panel found that the expert's testimony "would have gone to a predicate matter—whether Cohen suffered from a Narcissistic Personality

---

[57] *Id.*

[58] *Id.* at 679 n.1 (quoting *United States v. Erskine*, 588 F.2d 721, 723 (9th Cir. 1978) (per curiam)).

[59] *Id.* at 676 (quoting *United States v. Sirhan*, 504 F.2d 818, 819 n.2 (9th Cir. 1974)).

[60] *United States v. Cohen*, 510 U.S. 1114, 1123 (9th Cir. 2007) (internal quotation marks omitted); *see also* Doc. 95 at 6 (writing that Goldstein's psychiatric evaluation "does not come close to establishing with convincing clarity that Defendant suffered from a severe mental disease or defect.").

[61] *Cohen*, 510 U.S. at 1123 (block quotation omitted) (italics omitted).  Dr. Norton A. Roitman's report indicated that

> [b]ecause [Cohen's] beliefs are fixed and have led him to significant adverse consequences, he is irrational to the point of dysfunction, demonstrated by his stubborn adherence in the face of overwhelming contradictions and knowledge of substantial penalty . . . .  Despite evidence to the contrary, his psychological needs dominated his mentation . . . .  This is the nature of the narcissistic personality in which the sufferer could essentially pass a lie detector test when asked commonsensical questions while giving improbable answers.

*Id.*

[62] *Id.* at 1125 (quoting *United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997)) (internal quotation marks omitted).

Disorder"—without violating Rule 704(b)'s prohibition on mens-rea testimony.[63] It then specified

the tailored manner in which this expert should testify at trial:

> We have little doubt that if [the psychiatrist] had been permitted to testify as to all of the conclusions contained in his report, some of that proffered testimony as contained in the report would have invaded the province of the jury and violated Rule 704(b). However, the best way for the district court to have insured the exclusion of the potentially inadmissible aspects of [the] testimony was not to bar him from testifying altogether, but to sustain the government's objections to particular questions likely to elicit inadmissible evidence under the rule.[64]

Further, the Ninth Circuit observed that the district court could have brought the parties together

before trial to discuss the limits of expert testimony rather than rely on the trial process alone.[65]  In

short, the district court had Rule 704(b) obligation to keep the expert from testifying in a way that

would force the jury to conclude the defendant lacked specific intent—and, in that case, could have

done so by facilitating a pretrial conference and by considering objections during testimony.

### 1. Goldstein may offer diminished-capacity evidence.

Goldstein seeks to present expert evidence of a mental condition under Federal Rule of

Criminal Procedure 12.2(b).[66]  The Government argues that Goldstein's psychiatric evaluation "does

not come close to establishing with convincing clarity that [he] suffered from a severe mental

disease or defect."[67]  Goldstein counters that, because he is charged with specific-intent crimes, he is

"entitled to present a diminished capacity defense and submit any relevant evidence that will help

determine whether he possessed sufficient intent to commit the offenses with which he has been

charged."[68]  IDRA's "clear and convincing evidence" standard is a burden of proof for an

affirmative defense, which is argued in court, not a standard for the admissibility of relevant

---

[63] *Id.* at 1126.

[64] *Id.* at 1126 (citing *United States v. Finley*, 301 F.3d 1000, 1005 (9th Cir. 2002)).  Federal Rule of Evidence 704(b) states that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."

[65] *Id.* (citing *United States v. Finley*, 301 F.3d 1000, 1005 (9th Cir. 2002)).

[66] Docs. 124, 129.

[67] *See* Doc. 85; *see also* Doc. 95 at 6.

[68] Doc. 114  at 6.

1    evidence.[69]  This evidence should go to the jury for evaluation under the clear-and-convincing-

2    evidence standard.

3         Because diminished-capacity evidence is admissible and relevant in this jurisdiction,[70] this

4    Court finds Goldstein's diminished-capacity evidence admissible as to any specific intent crimes

5    charged, subject to a pretrial conference regarding the limitations of such evidence and subject to

6    objections the Government may make at trial.[71]  The Court now turns to determining which charged

7    offenses, if any, are specific-intent crimes to which the diminished-capacity defense could apply.

8              ***2. Goldstein is charged with three specific-intent crimes.***

9         Goldstein was indicted on four criminal counts in October 2010: (1) carjacking under 18

10   U.S.C. § 2219, (2) use of a firearm during and in relation to a crime of violence under 18 U.S.C. §

11   924(c)(1)(A)(i)–(ii), (3) interference with commerce by armed robbery at Victory Pharmacy under

12   18 U.S.C. § 1951, and (4) use of a firearm during and in relation to a crime of violence under 18

13   U.S.C. § 924(c)(1)(A)(i)–(ii).[72]  The Government concedes that carjacking and attempt are specific-

14   intent crimes, but argues that brandishing a firearm is a general-intent crime.[73]  Goldstein agrees that

15   the first two are specific-intent crimes and argues that, under the Ninth Circuit *United States v. Dare*

16   decision cited by the Government, it is discharging rather than brandishing a firearm that is the

17   general-intent crime.[74]  He argues that it is "premature" to treat brandishing as a specific-intent

18   crime and submits that threats, such as the threats to kidnap and injure people in *United States v.*

19   *Twine*, are specific-intent crimes.[75]  The Ninth Circuit has not directly defined the intent required for

20

21        [69] 18 U.S.C. § 17.

22        [70] *See id.*

23        [71] *See Cohen*, 510 F.3d at 1126 (citing *United States v. Finley*, 301 F.3d 1000, 1005 (9th Cir. 2002)).

24        [72] Doc. 1 at 1–3.

25        [73] Doc. 95 at 7, n.4–6 (citing *Holloway v. United States*, 526 U.S. 1, 13 (1999); *United States*
26   *v. Gracidas-Ulibary*, 231 F.3d 1188 (9th Cir. 2000) (en banc); *United States v. Dare*, 425 F.3d 634, 641 n.3 (9th Cir. 2005)).

27        [74] Doc. 114 at 4.

28        [75] *Id.* (citing *United States v. Twine*, 853 F.2d 676, 677, 681 (9th Cir. 1988)).

brandishing a firearm in relation to a crime of violence or drug trafficking, so the Court now turns to the statutory language and judicial precedent to categorize the charges in this case.

### a. The carjacking and interference-with-commerce charges

The first two crimes are readily categorized. Under 18 U.S.C. § 2119, the intent requirement for carjacking is satisfied when a person acts "with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce." This is a specific-intent requirement.[76] The Supreme Court held in *Holloway v. United States* that Section 2219's intent requirement "is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)."[77] The Court finds that the parties correctly agree that the carjacking charge is a specific-intent crime.

Second, Goldstein is charged here with attempted Hobbs robbery under 18 U.S.C. § 1951, which criminalizes a person's conduct when he "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or *attempts* or conspires so to do, or commits or threatens physical violence to any person or property."[78] Attempt is a specific-intent crime "whether or not the crime attempted includes an element of specific intent."[79] This circuit further recognizes that, unless Congress specifies otherwise, "attempt" is given its common-law meaning in criminal statutes.[80] No alternate meaning

---

[76] *Holloway v. United States*, 526 U.S. 1, 11–12 (1999).

[77] *Id.* at 12.

[78] 18 U.S.C. § 1951 (emphasis added).

[79] *United States v. Gracidas-Ulibarry*, 192 F.3d 926, 929 (9th Cir. 1999) (citing *United States v. Sneezer*, 900 F.2d 177, 179 (9th Cir.1990)). The Ninth Circuit makes allowance for regulatory statutes that are not based on common-law crimes. *Id.* In those cases, where attempt may not require a specific-intent showing. *Id.* This is distinguishable from the instant case, where the attempted crime is based on robbery—a common-law crime that precedes every legislative regulation on the books.

[80] *Gracidas-Ulibarry*, 231 F.3d at 1193–94.

12

is specified for "attempt" in the language of Section 1951.  The Court therefore gives this word its ordinary meaning and finds that the attempted-robbery charge against Goldstein is similarly a specific-intent offense.

### b. The firearm charges

Finally, the language of 18 U.S.C. § 924(c) provides in pertinent part that:

> (1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.[81]

This was the statute at issue in *Dare*, in which the defendant appealed his ten-year sentence for discharging a firearm during the course of a drug-trafficking crime.[82]  He argued that "brandishing" under the direct language of 18 U.S.C. § 924(c)(4) "require[d] a showing of specific intent that the display of the firearm was to 'make the presence of the firearm known to another person in order to intimidate that person.'"[83]  The district court found that he "discharged" a firearm under Section 924 and, because that term is not defined in the statute, and the Ninth Circuit "conclude[d] that a 'discharge' requires only a general intent."[84]  Discharge is not charged here.

The crimes of discharge and brandishing are also readily distinguishable.  Unlike discharge, which Congress leaves to its ordinary meaning, brandishing is expressly defined in Section 924(c).

---

[81] 18 U.S.C. § 924.

[82] *Dare*, 425 F.3d at 635.

[83] *Id.* at 941 n.3

[84] *Id.*

1   It "means, with respect to a firearm, to display all or part of the firearm, or otherwise make the

2   presence of the firearm known to another person, *in order to* intimidate that person, regardless of

3   whether the firearm is directly visible to that person."[85]   The Supreme Court made this very

4   distinction between discharge and brandishing in *Dean v. United States*, where it wrote that Section

5   924(c)(4)'s passive voice regarding discharge "does not require proof of intent."[86]   In contrast, for

6   the government to prove brandishing, it must show that "[t]he defendant must have intended to

7   brandish the firearm, because the brandishing must have been done for a specific purpose."[87]

8   Without that specific intent, an act cannot qualify as brandishing.

9           Accordingly, the Court finds that Goldstein is charged with three specific-intent crimes, with

10  the brandishing count appearing twice, for a total of four counts.  Diminished-capacity evidence is

11  admissible as to all four courts, subject of course to a pretrial conference regarding the limitations of

12  such evidence, any necessary and appropriate limiting instructions, and any objections the

13  Government may make at trial.[88]

### Conclusion

15          According, it is hereby ORDERED that the Government's Motion in Limine to Exclude

16  Defendant from Offering Expert Psychiatric Testimony **[Doc. 95] is DENIED**.

17          DATED March 21, 2014.

20          _____

21          Jennifer A. Dorsey
            United States District Judge

---

[85] 18 U.S.C. § 924(c)(4) (emphasis added); *Dean v. United States*, 556 U.S. 568, 572 (2009) (quoting 18 U.S.C. § 924(c)(4)).

[86] *Id.* (citing *Watson v. United States*, 552 U.S. 74, 81 (2007)) (citations omitted) (writing that the statute "does not require that the discharge be done knowingly or intentionally, or otherwise contain words of limitation.").

[87] *Id.* at 572–73 (citing 18 U.S.C. § 924(c)(4)).

[88] *See Cohen*, 510 F.3d at 1126 (citing *United States v. Finley*, 301 F.3d 1000, 1005 (9th Cir. 2002)).